STATE OF MAINE                                          SUPERIOR COURT
SAGADAHOC, ss                                           CIVIL ACTION
                                                        DOCKET AP-12-4
                                                        AMH - SAG - 11/7/2012

JOHN JORGENSEN
                    Petitioner

        v.

SECRETARY OF STATE OF MAINE

                    Respondent

## RULE 80C DECISION AND JUDGMENT

Petitioner John Jorgensen has appealed, pursuant to M.R. Civ. P. 80C, from an

administrative decision of the Bureau of Motor Vehicles, a division of the respondent Office of

Secretary of State, suspending his driver's license for a period of 275 days and his commercial

driving license for one year for failure to submit to a test for the presence of alcohol at the

request of a law enforcement officer, *see* 29-A M.R.S.A. § 2521(2011).

For the reasons set forth herein, the court denies the Petitioner's appeal and grants

judgment to the Respondent.

### FACTUAL AND PROCEDURAL BACKGROUND

Effective January 28, 2012, the Secretary of State administratively suspended the driver's

license of John Jorgensen for a 275-day period pursuant to 29-A M.R.S.A. § 2521 (2011) and

one year for a violation of 29-A M.R.S.A. § 2458(2)(M) (2011) based on a report from a

Topsham Police Officer that Mr. Jorgensen refused to submit to a chemical test upon the

officer's demand on December 26, 2011. On January 19, 2012, the Secretary received Mr.

Jorgensen's timely request for an administrative hearing, which was ultimately held on April 6,

2012.

1

Before and at the outset of the hearing, counsel for Mr. Jorgensen sought to challenge whether Officer Cook had probable cause to arrest, whether Mr. Jorgensen had been driving under the influence and whether Mr. Jorgensen actually refused to submit to a test.[1]

On May 18, 2012, following the hearing, the hearing examiner issued his written opinion, pursuant to 29-A M.R.S.A. § 2521(8), that a preponderance of the evidence established that there was probable cause to believe that (1) Mr. Jorgensen had operated a motor vehicle while under the influence of intoxicants; (2) the officer had informed Mr. Jorgensen of the consequences of failing to submit to a test; and (3) Mr. Jorgensen failed to submit to a test. The hearing examiner based his finding on the testimony of the officers and Officer Cook's report that was admitted into evidence at the hearing. These findings included:

- On December 26, 2011 at about 3:45 a.m. Officer Randy Cook, of the Topsham Police Department, was advised by dispatch of a vehicle off the road;

- After arriving on the scene, Officer Cook observed a green Buick missing a rear tire, on the side of the road;

- Using a Maine driver's license, Officer Cook identified the male as John S. Jorgensen;

- Officer Cook asked Mr. Jorgensen where he had been coming from and where he was headed;

- Mr. Jorgensen stated that he had been "chasing a female around Lewiston" and "was headed to… South Bristol";

---

[1] In support of his argument Mr. Jorgensen issued a subpoena to the Topsham Police Department requesting a copy of a recording of the intoxilyzer process. As a result of technical difficulties, the Topsham Police Department was not able to provide the recording at the time of the hearing. Both at the beginning of the hearing and at the close of the hearing, the hearing examiner offered Mr. Jorgensen the opportunity to submit the recording at a later time if it should become available. The video was eventually provided to Mr. Jorgensen at the end of July 2012.

- When Officer Cook asked Mr. Jorgensen to provide his license, Mr. Jorgensen handed the officer a credit card;

- Mr. Jorgensen admitted that he drank wine about four hours ago;

- While speaking with Jorgensen, the officer smelled alcohol on his breath and noticed that he "was very unstable on his feet and was swaying back and forth and leaning on his vehicle for support";

- Officer Cook told Mr. Jorgensen that he thought he had more to drink then he admitted and that he thought he was "extremely intoxicated";

- Mr. Jorgensen agreed with the officers statement and acknowledged that he should not be driving;

- Mr. Jorgensen then added that he wanted to pull off the road and "sleep it off";

- Mr. Jorgensen fell twice while being instructed how to perform the walk and turn field sobriety test, so the officer terminated the test;

- Mr. Jorgensen was asked to submit to an intoxilyzer test, and he told the officer that he was not going to take the test;

- Each of the warnings on the implied consent form was read out loud and explained to Mr. Jorgensen;

- Mr. Jorgensen signed the refusal box on the implied consent form, confirming that he had been advised of the consequences of refusal to submit to the test.

Mr. Jorgensen now appeals that decision asserting that the Bureau of Motor Vehicles (BMV) failed to put forth sufficient evidence to support a license suspension. Specifically Mr. Jorgensen asserts that the BMV failed to show that, by a preponderance of the evidence there

3

was probable cause to believe that Mr. Jorgensen actually refused to submit to a chemical test.[2]

Additionally, in his timely reply, filed September 20, 2012, Mr. Jorgensen contends that it would be grossly unfair to reaffirm the hearing examiner's decision to uphold the license suspensions after the State agreed to strike the refusal language from the complaint, in exchange for a guilty plea to Operating Under the Influence with a 90 day court ordered license suspension and $500.00 fine.

After the hearing examiner affirmed Mr. Jorgensen's license suspensions, Mr. Jorgenson provided a copy of the intoxilyzer video (the video) to the hearing examiner and Attorney General's Office. Although the hearing examiner issued his decision on May 18, 2012, he reviewed the video and reasoned that because there was no audio, there was no evidence to be evaluated. The hearing examiner subsequently sent a letter to both the Attorney General's Office and Mr. Jorgensen affirming his prior decision despite the additional evidence. After Mr. Jorgensen filed his brief, Assistant Attorney General Donald Macomber filed *Respondent's **Unopposed** Motion to Take Additional Evidence* to this Court.

## DISCUSSION

I. *Standard of Review*

Pursuant to 5 M.R.S.A. § 11007(4) (2011), the court may reverse or modify an agency's decision if the administrative findings, inferences, conclusions or decisions are: "1) [i]n violation of constitutional or statutory provisions; 2) [i]n excess of the statutory authority of the agency; 3) [m]ade upon unlawful procedure; 4) [a]ffected by bias or error of law; 5) [u]nsupported by

---

[2] In his *pro se* brief, Mr. Jorgensen requests this court to "expunge from the Court record" the "breath test portion of the State's charges against" him. (Br. of Pet. 3.) Clearly expungment of Mr. Jorgensen's criminal conviction for OUI is outside the scope of this 80C Administrative appeal. See 5 M.R.S.A. § 11007(4) (2011). Therefore, this Courts review of the record is limited to the BMV administrative license suspensions for Mr. Jorgensen.

4

substantial evidence on the whole record; or 6) [a]rbitrary or capricious or characterized by abuse of discretion."

As stated by the Law Court, the power to review decisions of the Commission is confined to an examination of "whether the Commission correctly applied the law and whether its fact findings are supported by any competent evidence." *McPherson Timberlands, Inc. v. Unemployment Ins. Comm'n*, 1998 ME 177, P 6, 714 A.2d 818, 820.

Additionally, the Court cannot "substitute its judgment for that of the agency on questions of fact." 5 M.R.S.A. § 11007(3) (2011). "[F]actual findings must be affirmed unless clearly erroneous." *Green v. Comm'r of the Dep't of Mental Health, Mental Retardation and Substance Abuse Svcs.*, 2001 ME 86, P 9, 776 A.2d 612, 615 (citation omitted). "[U]nless the record before the Commission compels a contrary result," the Court will uphold the agency decision. *McPherson*, 1998 ME 177, P 6, 714 A.2d at 820. Finally, "the burden of proof clearly rests with the party seeking to overturn the decision of an administrative agency." *Seven Islands Land Co. v. Maine Land Use Regulation Comm'n*, 450 A.2d 475, 479 (Me. 1982).

II. *Was the Decision of the Hearing Examiner Unsupported by Substantial Evidence on the Whole Record?*

In order to lawfully suspend Mr. Jorgensen's license, the BMV must show, 1) there was probable cause to believe the person operated a motor vehicle while under the influence of intoxicants; 2) the person was informed of the consequences of failing to submit to a test; and 3) the person failed to submit to a test. 29-A M.R.S. § 2521(8) (2011). Mr. Jorgensen requests a reversal of the decision of the hearing examiner of the BMV, suspending his Maine license for 275 days and his commercial license for one year, because he asserts that the decision is unsupported by substantial evidence on the whole record that he actually refused to submit to a chemical test. *See* 5 M.R.S.A. § 11007(4)(C)(5) (2011).

5

When the court is asked to reverse a decision of an administrative agency pursuant to section 11007(4)(C)(5), the court examines "the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶13, 989 A.2d 1128 (citations omitted).

At the hearing Mr. Jorgensen offered his own testimony, and version of the December 26, 2011 events, that were substantially different from Officer Cook's report and the testimony of Officers Cook and Herbert. Mr. Jorgensen testified that while he remembered Officer Cook asking him if he wanted to take an intoxilyzer test he also remembered Officers Cook and Herbert advising him to "[t]ake the refusal, take the refusal" in response to Mr. Jorgensen's request for advice.[3]

In contrast, the hearing officer found the testimony of Officers Cook and Herbert "very convincing, reliable and persuasive." Officer Cook testified to what he had written in his report and what he remembered about the events of December 26. Officer Cook testified that after arriving back at the station, Officer Cook attempted to perform field sobriety tests on Jorgensen to determine his level of intoxication. While trying to explain the 'walk and turn" test, Mr. Jorgensen was very unstable on his feet, and started to fall backwards. Officer Cook terminated the field sobriety tests because he determined it was not safe for Mr. Jorgensen to perform any of the standard field sobriety tests.

Subsequently, Officer Cook testified that he advised Mr. Jorgensen that he wanted him to take a breathalyzer to determine his blood alcohol. According to Officer Cook, Mr. Jorgensen

---

[3] In addition to the testimony of Mr. Jorgensen, the hearing examiner reviewed the DVD of the intoxilyzer room activities that was provided to Mr. Jorgensen, by the District Attorney's Office, in late July 2012. After reviewing the video the hearing examiner determined that there was no new evidence to be evaluated, and was standing by his original decision. *See Bureau of Motor Vehicles letter to Assistant Attorney General Donald Macober dated 10/22/2012.*

explained that he was not going to take the test because, back in 1999, he had been arrested for OUI, refused to take the test and pled guilty to driving while impaired. Officer Cook then testified that he read Mr. Jorgensen the implied consent form and explained each paragraph to him, reread paragraph three of the implied consent form and explained the consequences of a refusal to Mr. Jorgensen. Officer Cook testified that he again asked Mr. Jorgensen if he would take breathalyzer. According to Officer Cook, Mr. Jorgensen responded by asking the officer, what he thought he should do. Officer Cook responded by reiterating what the consequences were and that he would have to make his own decision. Mr. Jorgensen again refused to take the test. Having read the implied consent form twice, and explaining the consequences of not taking the required test, Officer Cook had Mr. Jorgensen sign the form indicating that he did not wish to submit to a test.

Realizing that his breathalyzer certification had expired, Officer Cook requested that dispatch contact Brunswick Police Department to see if they had an available police officer who could perform the breathalyzer. A few minutes after Officer Cook's request, Officer Dan Herbert of the Brunswick Police Department arrived and administered the breathalyzer.

Additionally, Officer Herbert testified that while he was in the room with Mr. Jorgensen he did not speak to him at any time. Officer Herbert went on to testify that while he did not recall Mr. Jorgensen asking for advice on whether or not he should take the breathalyzer, he had never advised anyone to not submit to the test.

Based on the evidence in the record, the hearing examiner concluded that Mr. Jorgensen did fail to comply with his duty to submit to the intoxilyzer test by verbally declining to the test and by in fact not submitting to the test. The hearing examiner also concluded that while Mr. Jorgensen's recollection of what transpired at the police station differed from the testimony of

7

both officers, the alcohol he consumed that night clouded his judgment. Accordingly, the hearing examiner affirmed the suspension of Mr. Jorgensen's drivers license.

Based on all of the testimony and exhibits before this Court, and deferring to the hearing examiner's credibility assessment, this Court cannot say that the hearing examiner's fact finding was clearly erroneous, that there was insufficient evidence upon which he made his determination or that the record compels a different result.

*III. Does the Secretary of State's Administrative License Suspension conflict with the Court Ordered License Suspension Imposed After Mr. Jorgensen Pled Guilty to Operating Under the Influence?*

Under 29-A M.R.S.A. § 2521(5) "[t]he Secretary of State shall immediately suspend the license of a person who fails to submit to and complete a test." Subsections 6 and 7 of § 2521 add that, "the suspension is 275 days for the first refusal" and the "suspension must be removed if, after a hearing pursuant to section 2483, it is determined that the person would not have failed to submit but for the failure of the law enforcement officer to give the warnings required..." Nowhere does the Legislature mention removal of an administrative suspension in light of a court ordered suspension. In fact, 29-A M.R.S.A. § 2485(4) establishes "[t]he determination of facts by the Secretary of State is independent of the determination of the same or similar facts in an adjudication of civil or criminal charges arising out of the same occurrence. The disposition of those charges may not affect a suspension ordered by the Secretary of State."

Therefore, Mr. Jorgensen's contention that the court ordered 90-day license suspension somehow precludes any administrative suspension is misguided. While the District Attorney's Office agreed to strike the refusal language from the criminal complaint in exchange for a plea to Operating Under the Influence, it has no effect on the Secretary of State's duty to suspend the license based on the submission of the implied consent form signed by Mr. Jorgensen. *See*

8

*Benedix v. Sec'y of State*, 603 A.2d 473, 474 (Me. 1992) (Secretary of State's suspension powers are "separate from and in addition to that of the courts"); *State v. Holmes*, 2004 ME 155, P6 (Me. 2004).

*IV. Are the State and Mr. Jorgensen Entitled to the Taking of Additional Evidence Under M.R. Civ. P. 80C(e) and 5 M.R.S.A. § 11006(1)?*

A motion to take additional evidence under Rule 80C(e) is governed by 5 M.R.S.A. § 11006(1) ("§ 11006(1)"). The general rule of § 11006(1) is that judicial review of agency action is limited to "the record upon which the agency decision was based." The exceptions to the general rule are § 11006(1)(A), allowing the Superior Court itself to take additional evidence in certain circumstances, and § 11006(1)(B), allowing remand to the agency to take additional evidence.

Section 11006(1)(A) states that the reviewing court itself may take additional evidence "[i]n the case of the failure or refusal of an agency to act or of alleged irregularities in procedure before the agency which are not adequately revealed in the record." To establish "irregularities in procedure," the moving party must present at least prima facie evidence of some impropriety on the agency's part, such as bad faith or improper behavior. *Carl L. Cutler Co., Inc. v. State Purchasing Agent*, 472 A.2d 913, 918 (Me. 1984). *See also Strong Green Energy, LLC v. Geneva Wood Fuels, LLC*, 2009 Me. Super. LEXIS 156, *5 (July 17, 2009) ("Procedural irregularity of the type contemplated by section 11006(1)(A) clearly encompasses some form of bad faith, bias, improper behavior, or other misconduct.") (citations omitted).

The State's unopposed motion to consider additional evidence argues that the video and letter of the hearing examiner dated August 22, 2012, should be considered by this Court to determine if it would impact the court's review of the hearing officer's decision to affirm the administrative suspension.

9

Section 11006(1)(B) states that the reviewing court may remand to the agency for the taking of additional evidence

> if it finds that additional evidence . . . is necessary to deciding the petition for review; or if application is made to the reviewing court for leave to present additional evidence, and it is shown that the additional evidence is material to the issues presented for review, and could not have been presented or was erroneously disallowed in proceedings before the agency

Despite the "or" separating the two clauses, Maine case law has not distinguished the two clauses; rather the statute has been read to require two elements before remanding a case to the agency for additional evidence: (1) the proffered evidence is material to the issues on review, and (2) the evidence could not have been presented to the agency. *Smith v. Maine Emp't Sec. Comm'n*, 456 A.2d 2, 7-8 (Me. 1983).

As for the materiality requirement, neither the State nor Mr. Jorgensen has met its burden. In fact, the State in its own motion cites to the hearing examiner's letter stating that because there was no audio on the video there was no new evidence to consider. Therefore, the unopposed motion fails to meet the materiality requirement. As for the second requirement under § 11006(1)(B), that the evidence "could not have been presented or was erroneously disallowed" at the agency proceedings, the joint motion is clear that while the video was not available at the time of the hearing, it was eventually viewed by the examiner who determined that it contained no new evidence.

Therefore, even if the court were to remand this case back to the agency to consider the video, the hearing examiner has already made the determination that he would stand by his decision to affirm the license suspensions. A remand would be fruitless.

Therefore, the entry is:

The Unopposed Motion to Take Additional Evidence is DENIED.

The petitioner's appeal is DENIED.

10

The Clerk is directed to incorporate this Order into the docket by reference pursuant to

M.R. Civ. P. 79(a).

Dated: *Nov. 7, 2012*

A. M. Horton
Justice, Superior Court

11

Date Filed  06/14/2012          Sagadahoc County                    Docket No. AP-12-4

Action:   80C Appeal

John Jorgensen                  vs.            Secretary of State

Plaintiff's Attorney                    Defendant's Attorney
John Jorgensen                          Donald W. Macomber, AAG
1575 Route 129                          Office of the Attorney General
South Bristol, ME 04568                 6 State House Station